J-S06017-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF: D.M.C., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: K.C., FATHER | : | |
| | : | No. 2686 EDA 2019 |

Appeal from the Order Entered August 13, 2019
In the Court of Common Pleas of Montgomery County Orphans' Court at
No(s):  No. 2019-A0104

BEFORE:  LAZARUS, J., McLAUGHLIN, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY McLAUGHLIN, J.:                **FILED APRIL 06, 2020**

K.C. ("Father") appeals from the order terminating his parental rights to D.M.C. ("Child"). Counsel has filed an **Anders**[1] brief and a petition to withdraw as counsel. We affirm the order and grant counsel's petition to withdraw.

Child was born in January 2010. The Montgomery County Office of Children and Youth ("OCY") became involved with this family in January 2012. In November 2017, Child was removed from the home and placed with pre-adoptive foster parents, with whom she continues to reside.

In July 2019, OCY filed a petition to terminate Father's parental rights. The trial court held a hearing, which Father did not attend.[2]

---

[1] **Anders v. California**, 386 U.S. 738 (1967).

[2] Father's counsel stated that he "followed through with every known resource to find [Father]." N.T., 8/12/19, at 12. He stated there was "the possibility

At the hearing, OCY caseworker Michael Weaver testified to the following. OCY developed a family service plan for Father, which included, among other goals: be a law abiding citizen; have no police contact; keep OCY up to date with contact information; and establish a visitation schedule. Father did not make any progress on the goals. N.T., 8/12/19, at 20. Father has had no contact with Child since her placement. The only contact Father has had with OCY is a November 2018 text message, stating he wanted to get Child back. *Id.* at 17. OCY responded, but Father did not reply. *Id.* OCY sent copies of the family service plans, requesting that Father review them, but Father did not execute and return them. *Id.*

Mr. Weaver also testified that Child was "responding well to the structure that the foster parents are providing for [her], [she is] doing much better in school, [she is] participating in individual therapy." N.T., 8/12/19, at 16. He felt her "progress has been remarkable," and that she is "anxious about what's going on, but [is] doing well." *Id.*

The trial court terminated Father's parental rights finding termination proper under 23 Pa.C.S.A. § 2511(a) (1), (2), and (8), and 2511(b).[3] The court concluded that Father had no contact with Child since she was placed in foster care in November 2017, and had almost no contact with OCY. It stated

---

that he's in state custody for a crime, but we have not received confirmation of that." *Id.* He stated that Father "was not an active participant once he was initially released." *Id.*

[3] Mother consented to termination of her parental rights. N.T., 8/12/19, at 9.

he failed to provide for Child as a father. He "has not provided her with love, support, emotional support, clothing, food, shelter, or any other things that the child needs to grow and thrive." *Id.* at 35. The court concluded that Father "simply [has] been failing to parent for the entire period of time, and [has] failed to meet [Child']s needs or be a presence in [her] life at the time [she was] removed, and that condition continues to exist, and termination of parental rights so that [Child] may be freed for adoption will best serve the developmental needs and welfare of [Child]." *Id.* at 37. The court further found there was no parental bond between Father and Child, and that "a bond has developed between the foster parents and [Child]." *Id.* at 38. It therefore found that "termination of the rights of [Father] best served the needs and welfare of [Child] and will not irrevocably harm [Child]." *Id.* at 38-39.

The court further addressed Father's incarceration:

> The Court need not consider whether the incarceration of [Father] either established a ground or establishes any kind of an excuse for not having contact with the children because it appears, to the best of this Court's knowledge and from Mr. Weaver's testimony, that [he has] been released for a significant period of time and did not use that time to establish and maintain a parental role in [Child's life].

N.T., 8/12/19, at 37.

Father filed a timely notice of appeal. Counsel filed an *Anders* brief, stating counsel found no non-frivolous issues for appeal.

Before reviewing the merits of this appeal, we must first determine whether counsel has satisfied the procedural requirements for withdrawing as

counsel. *See Commonwealth v. Goodwin*, 928 A.2d 287, 290 (Pa.Super. 2007) (*en banc*) (stating that "[w]hen faced with a purported *Anders* brief, this Court may not review the merits of any possible underlying issues without first examining counsel's request to withdraw"). To withdraw pursuant to *Anders*, counsel must: 1) petition the court for leave to withdraw stating that, after a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the brief to the client; and 3) advise the client that he or she has the right to retain other counsel or proceed *pro se*. *Commonwealth v. Cartrette*, 83 A.3d 1030, 1032 (Pa.Super. 2013) (*en banc*).

Further, in the *Anders* brief, counsel seeking to withdraw must:

> (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Commonwealth v. Santiago*, 978 A.2d 349, 361 (Pa. 2009). If counsel meets all of the above obligations, "it then becomes the responsibility of the reviewing court to make a full examination of the proceedings and make an independent judgment to decide whether the appeal is in fact wholly frivolous." *Id.* at 355, n.5 (quoting *Commonwealth v. McClendon*, 434 A.2d 1185, 1187 (Pa. 1981)).

- 4 -

Here, we conclude that counsel has substantially complied with the technical requirements of **Anders** and **Santiago**. In the **Anders** brief, counsel has provided a summary of the procedural and factual history of the case. Further, counsel's brief identifies four issues that could arguably support the appeal, as well as counsel's assessment of why the appeal is frivolous, with citations to the record. Additionally, counsel provided a copy of the **Anders** brief to Father and advised him of his right to proceed **pro se** or to retain a new counsel. Petition for Leave to Withdraw Appearance, filed Dec. 10, 2019; Letter to Father, dated Dec. 4, 2019; **Anders** Br. at 10. Father has not filed any documents with this court.

As counsel has substantially met the technical requirements of **Anders** and **Santiago**, we now turn to the issues identified in the **Anders** brief:

> 1. Whether an application to withdraw as counsel should be granted where counsel has investigated the possible grounds for appeal and finds the appeal frivolous.
>
> 2. Whether the Honorable Court committed an error of law and/or abuse of discretion when it held that appellee had proven by "clear and convincing evidence" that appellant's parental rights should be terminated pursuant to 23 Pa. C.S. § 2511 (a)(1) where birth father was making substantial progress on his Family Service Plan(s) goals as evidenced by the testimony at the hearing and Family Service Plans themselves.
>
> 3. Whether the Honorable Court committed an error of law and/or abuse of discretion when it held that appellee had proven by "clear and convincing evidence" that appellant's parental rights should be terminated pursuant to 23 Pa. C.S. § 2511 (a)(2) in that the repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for their physical or mental well-being and the

conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

4. Whether the Honorable Court committed an error of law and/or abuse of discretion when it held that appellee had proven by "clear and convincing evidence" that appellant's parental rights should be terminated pursuant to 23 Pa. C.S. § 2511 (a)(8) in that the Child had been removed from the care of a parent or guardian by the Court, 12 or more months have elapsed from the date of the removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the need and welfare of the child.

5. Whether the Honorable Court committed an error of law and/or abuse of discretion when it terminated Appellant's parental rights pursuant to 23 Pa. C.S. 2511 (b) on the basis that the developmental, physical, emotional and welfare of the child's was best served by termination of birth father's rights where he was making substantial progress on the Family Service Plans.

*Anders* Br. at 6. The issues challenge the trial court's decision that termination of parental rights was proper under Section 2511(a) and (b).

When we review termination of parental rights cases, we "accept the findings of fact and credibility determinations of the trial court if they are supported by the record." *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (quoting *In re Adoption of S.P.*, 47 A.3d 817, 826 (Pa. 2012)). "If the factual findings have support in the record, we then determine if the trial court committed an error of law or abuse of discretion." *In re Adoption of K.C.*, 199 A.3d 470, 473 (Pa.Super. 2018). We may find an abuse of discretion "only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." *In re Adoption of S.P.*, 47 A.3d at 826.

Our Supreme Court has explained the reasons for applying an abuse of discretion standard of review in termination of parental rights cases:

> [U]nlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion.

*Id.* at 826-27 (citations omitted).

A party seeking to terminate parental rights has the burden of establishing grounds for termination by clear and convincing evidence. *In re Adoption of K.C.*, 199 A.3d at 473. Clear and convincing evidence means evidence "that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue." *Id.* (quoting *In re Z.S.W.*, 946 A.2d 726, 728-29 (Pa.Super. 2008)).

Termination of parental rights is controlled by Section 2511 of the Adoption Act. *In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007). Section 2511 requires a bifurcated analysis:

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only

> if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*Id.* (citations omitted).

Where the trial court has terminated parental rights pursuant to multiple subsections of Section 2511(a), we need only agree with the trial court's decision as to one subsection, as well as to its analysis under Section 2511(b). *In re B.L.W.*, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*). Here, we will address only the court's decision to terminate pursuant to Section 2511(a)(1). That subsection provides that a parent's rights to a child may be terminated if:

> [t]he parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

23 Pa.C.S.A. § 2511(a)(1). "With respect to any petition filed pursuant to subsection (a)(1) . . . , the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition." 23 Pa.C.S.A. § 2511(b).

Subsection 2511(a)(1) requires the moving party to prove by clear and convincing evidence that the subject parent engaged in "conduct, sustained for at least the six months prior to the filing of the termination petition, which

reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties." **In re Z.S.W.**, 946 A.2d 726, 730 (Pa.Super. 2008). The parental obligation is a "positive duty which requires affirmative performance" and "cannot be met by a merely passive interest in the development of the child." **In re C.M.S.**, 832 A.2d 457, 462 (Pa.Super. 2003) (quoting **In re Burns**, 379 A.2d 535 (Pa. 1977)). Indeed,

> [p]arental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.

**In re B.,N.M.**, 856 A.2d 847, 855 (Pa.Super. 2004) (citations omitted).

Here, the trial court concluded that OCY established grounds for termination under Section 2511(a)(1). The court found that for the six month period Father "failed and refused to perform parental duties." N.T., 8/12/19, at 37. The court noted that Father "simply [has] been failing to parent for the entire period of time, and [has] failed to meet [Child's] needs or be a presence in [her] life." **Id.**

The record supports the trial court's findings of fact and it did not abuse its discretion or err as a matter of law in terminating Father's rights under Section 2511(a)(1). Father did not contact Child in anyway during her

dependency. He contacted OCY only once, via text message. Although OCY responded to Father, Father did not reply.

We next address the trial court's conclusion that termination would best serve Child's developmental, physical and emotional needs and welfare under Section 2511(b). Section 2511(b) provides:

> (b) Other considerations.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.
> . . .

23 Pa.C.S.A. § 2511(b).

The focus under Section 2511(b) is not on the parent, but on the child. *In re Adoption of C.L.G.*, 956 A.2d 999, 1008 (Pa.Super. 2008) (*en banc*). Pursuant to Section 2511(b), the trial court must determine "whether termination of parental rights would best serve the developmental, physical and emotional needs and welfare of the child." *In re C.M.S.*, 884 A.2d 1284, 1286 (Pa.Super. 2005). This Court has explained that "[i]ntangibles such as love, comfort, security, and stability are involved in the inquiry into [the] needs and welfare of the child." *Id.* at 1287. The trial court "must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond." *Id.*

Here, the trial court concluded termination would best serve the needs and welfare of Child and will not irrevocably harm Child. N.T., 8/12/19, at 38-

- 10 -

39. The trial court concluded no bond existed between Father and Child and that a bond had developed between Child and her foster parents.

The record supports the trial court's factual finding and it did not err or abuse its discretion in concluding termination would best serve Child's needs and welfare. Father has made no effort to remain in Child's life, and Child is thriving in her pre-adoptive foster home.

We agree with counsel that the issues raised in counsel's **Anders** brief are wholly frivolous. Moreover, our independent review of the record has disclosed no non-frivolous issue. Therefore, we grant counsel's petition to withdraw and affirm the decree terminating Father's parental rights.

Order affirmed.


*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*


*Date: 4/6/2020*